203 P.2d 594

## CHASE v. NEW MEXICO PUB. CO. et al.

### No. 5149.

Supreme Court of New Mexico.

Jan. 26, 1949.

Rehearing Denied March 22, 1949.

Quincy D. Adams, of Albuquerque, and Bigbee & Kool, of Santa Fe, for appellant.

Seth & Montgomery and Wm. R. Federici, all of Santa Fe, for appellees.

COMPTON, Justice.

Appellant instituted this proceeding against the New Mexico Publishing Company and Frank C. Rand, Jr., for libel. The claimed libel is an editorial published by appellee, New Mexico Publishing Company, April 19, 1947, as follows:

*"Discriminating Taste*

"One of our esteemed contemporaries, which shall be nameless, has made some unkind remarks about the 'high-falutin taste' of Revenue Commissioner Victor Salazar—all because he had the state buy him a $2,700. Buick, 18 feet long.

"After all, it seems to us, the taxpayers owe something to a selfless public servant who left the management of a highly profitable insurance business to starve along on a piddling $7,500. a year.

"And anyone can imagine how severely that insurance business must have suffered since Mr. Salazar placed himself in a position to dictate a large share of the state's insurance patronage.

"Such sacrifice would be too painful to contemplate if it were not for Mr. Salazar's well known cultural attainments, which enable him to be philosophical about his plight. These establish him as truly the 'man of discriminating taste' for whom those 18-foot $2,700. Buicks were designed especially.

"Take, for example, his charming refinement in refusing to have the car smeared all over with those messy, garish 'For Official Use Only' signs that some other state cars have. Remember, too, that he ordered the quiet black number. No maroon firewagons for him.

"Mr. Salazar's nice taste shows mainly, though, in his principal hobby. He is a noted collector of steel engravings of past U. S. Presidents, printed in subdued shades on U. S. treasury paper.

"It is said that his judgment and skill in this collection have drawn high expressions of admiration from such connoisseurs of the art as Johnny Michael, Joe Montoya and Ted Chase. Others, however, fear that his love for the hobby may react to the detriment of his official work.

"None, however, will sneer at this taste or ability. And it would be an uncompre-

hending soul indeed who would cavil at supplying a modest Buick for such as he."

The complaint alleges that the editorial was read, understood, and interpreted by the general public throughout New Mexico in the light of the following facts and circumstances known to the reading public:

"(1) Plaintiff since January, 1935 has been and still is an attorney-at-law, duly licensed, and (except from July 15, 1944 to December 1, 1946) practicing his profession at Santa Fe and Albuquerque in the state of New Mexico and at no time has he been engaged in any other pursuit or occupation in said state.

"(2) During the period from January 1, 1941 to July 15, 1944 he was Attorney General of said state. While Attorney General he was indicted by a grand jury of Santa Fe County upon a charge of agreeing to accept a bribe and was also indicted by a federal grand jury in Santa Fe upon a charge of violating the bankruptcy laws. While Attorney General he was also severely criticised in the defendants' newspaper for allegedly improper acts and conduct of his office and, in particular, on or about July 6, 1944, there was published in said newspaper by the defendants an article referring to the plaintiff and one Henry Hughes, who, it was stated in substances, had admitted conspiring with plaintiff to accept a bribe and in which there was used a sub-headline 'One Party Conspiracy', said article insinuating that plaintiff was also guilty of conspiracy.

"(3) There have been published by the defendants recently and from time to time in said newspaper, of and concerning Victor Salazar, Johnny Michael and Joe Montoya, the persons with whom plaintiff's name was associated in the editorial above quoted, various articles and editorials as follows:

"(a) Stating in substance or insinuating that Victor Salazar and Johnny Michael had obtained money from the State of New Mexico in an improper or illegal manner.

"(b) Stating in substance or insinuating that Joe Montoya had used his office as a member of the legislature as an excuse to avoid service in the United States Army during war-time.

"(c) And in particular, during the month of March, 1947, that Joe Montoya had made away with a bill passed by the New Mexico legislature and should be prosecuted therefor."

The sufficiency of the complaint to state a claim upon which relief can be granted is challenged by motion to dismiss. It is from an order granting the motion that the case is brought here for review.

The parties are in accord that the complaint is insufficient unless the publica-

tion is libelous per se, no actual or special damages having been alleged..

"Libel per se" is defined as:

"Any false and malicious writing published of another is libelous per se, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or to hinder virtuous men from associating with him."

Cooley on Torts (3d Ed.) 400; Colbert v. Journal Pub. Co., 19 N.M. 156, 142 P. 146; Ward v. Ares, 29 N.M. 418, 223 P. 766.

The term "per se" means by itself; simply as such; in its own nature without reference to its relation; and in connection with libel, the term is applied to words which are actionable because they of themselves, without anything more, are opprobrious. Marland Refining Co. v. Harrel, 167 Okl. 548, 31 P.2d 121; Tulsa Tribune Co. v. Kight, 174 Okl. 359, 50 P.2d 350, 353.

"Defamatory words may be divided into those that are actionable per se, and those that are actionable per quod. Words which, upon their face and without the aid of extrinsic proof, are injurious are defamatory per se; but if the injurious character of the words appears, not from their face in their usual and natural signification, they are not defamatory per se, and in such cases the words are said to require an innuendo. * * * Words which are defamatory per se do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory * * *. Words used in a publication, even if not actionable in and of themselves, may become actionable, if, under the circumstances and in connection in which they were used, they convey a hidden and covert defamatory meaning and are understood in such sense by the person or persons addressed, and became actionable per quod, that is, the publication must result in special damage to the party complaining; special damages must be alleged and proved." 36 C.J., Libel and Slander, § 17; See, also, 53 C.J.S., Libel and Slander, § 8.

"In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. * * *" Tulsa Tribune Co. v. Kight, supra.

"In determining whether the words used are slanderous per se, the innuendo is to be disregarded. It can neither add to, nor enlarge, their sense. Hence, if the meaning imputed is not their plain and obvious import, the court, in passing upon a demurrer questioning the per se character of such words, will ignore the innuendo. Newell on Slander and Libel (4th Ed.) §§ 542, 544, 549." Dillard v. Shattuck, 36 N.M. 202, 11 P.2d 543, 545.

"Innuendoes in the pleadings are, however, ineffective for the purpose of fixing the character of an alleged libelous publication as being libelous per se. *In determining whether or not a publication is libelous per se the language of the publication itself can alone be looked to, without the aid of innuendoes,* since the innuendo in libel cases is but the deduction of the pleader from the words used in the publication. Unless the pleader's deduction is supported by the language of the publication, the actionable quality of the publication is not legally disclosed. Wofford v. Meeks, 129 Ala. 349, 30 So. 625, 55 L.R.A. 214, 87 Am.St.Rep. 66." Layne v. Tribune Co., 1933, 108 Fla. 177, 146 So. 234, 237 86 A.L.R. 466. (Emphasis ours.)

"*In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances.* The article must be defamatory on its face 'within the four corners thereof.' Kee v. Armstrong, Byrd & Co., 75 Okl. 84, 182 P. 494, 5 A.L.R. 1349; Oklahoma Publishing Co. v. Kendall, 96 Okl. 194, 221 P. 762." Wiley v. Oklahoma Press Pub. Co., 106 Okl. 52, 233 P. 224, 225, 40 A.L.R. 573. (Emphasis ours.)

"But, in determining whether or not the published article is libelous per se, we must view it stripped of all innuendo, colloquium, or extrinsic or explanatory circumstances.

And, viewed from this standpoint, we must conclude that it is not libelous per se. Besides 'words which are libelous per se do not need an innuendo.' Central of Georgia R. Co. v. Sheftall, 118 Ga. 865, 45 S.E. 687. The very meaning of the phrase itself, 'per se,' which is, 'taken alone, in itself, by itself,' would indicate this. *And the very fact that plaintiff pleads and relies upon the innuendo set out in its petition to state a cause of action refutes the idea that the language is libelous per se; for 'words which are libelous per se do not need an innuendo,' and the converse is equally true, that words which do need an innuendo are not libelous per se."* Kee v. Armstrong, Byrd & Co., Okl.Sup. 1915, 151 P. 572, 574. Emphasis ours.

See also Wood v. Hannett, 35 N.M. 23, 289 P. 590; Ward v. Ares, 29 N.M. 418, 223 P. 766; Commander v. Pedersen, 116 Fla. 148, 156 So. 337.

Reading the article in the above light it is plain that it is not libelous per se. It is equally obvious that appellant, in order to state a cause of action, aside from the alleged libelous article, has alleged facts to show wherein it is libelous. The necessity of such allegations is satisfying that the article is not libelous per se, and special damages not being alleged, the complaint fails to state a claim upon which relief can be granted.

We conclude that the article, if libelous, is libelous per quod, and that appellee's motion to dismiss was properly sustained.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and SADLER, J., concur.

LUJAN and McGHEE, Justices (dissenting).

We agree with the legal principles stated in the opinion, but believe the published article is libelous per se, and therefore dissent.