625 P.2d 1219

**MAUCK, STASTNY & RASSAM, P. A., a New Mexico Professional Corporation and Keith W. Mauck, Frederick J. Stastny and Hormuzd Y. Rassam, Plaintiffs-Appellees,**

**v.**

**Bruce BICKNELL, Defendant-Appellant.**

**No. 3847.**

Court of Appeals of New Mexico.

June 24, 1980.

Michael Campbell, Campbell & Black, Santa Fe, for defendant-appellant.

Briones, Harrell & Wills, P.A., Farmington, for plaintiffs-appellees.

## OPINION

ANDREWS, Judge.

This appeal arises out of an action brought by Keith Mauck, Frederick Stastny, and Hormuzd Rassam, in both their individual capacities and in the name of their professional corporation (MSR) against Bruce Bicknell for libel. The trial court, sitting without a jury, awarded $37,-500.00 in actual damages and a like amount in punitive damages to each of the individual plaintiffs.

The factual background of this case is undisputed. On July 11, 1973, MSR entered into a contract with San Juan County to perform architectural services in connection with an addition to San Juan County Hospital. While two of the three principals in the professional corporation are architects registered to practice in New Mexico, neither were residents of the state. The third principal, Dr. Rassam, was a resident of New Mexico but was licensed as a professional engineer, rather than as an architect. It is required in New Mexico, with certain exceptions which are not applicable in the instant case, that all architectural services performed on public works projects be supplied by architects who are New Mexico residents. Section 61–15–9(A), N.M.S.A. 1978 (Supp.1979). Consequently, the eligibility of MSR for the hospital project became a subject of discussion by the New Mexico Board of Examiners for Architects and the subject of an article which ap-

peared on the front page of the *Farmington Daily Times*.

Bicknell wrote a letter highly critical of MSR's objections to an inquiry into the legality of its contract with the county, and went on to make statements which the trial court reasonably interpreted as casting aspersions on the honesty and professional competence of the members of MSR. The letter was printed and mailed to some 230 civil leaders, commercial leaders, and present prospective clients of MSR.

Defendant asserts five points of error, seeking to reverse the judgment below: (1) that the trial court applied the incorrect constitutional standard; (2) that the trial court abused its discretion in refusing to permit the defendant to amend his answer; (3) that the plaintiffs are barred from prosecuting any claim to collect damages because their business is in violation of state law; (4) defendant's letter constituted opinion and not fact and, therefore, could not be the subject of a libel action; and (5) that the letter was true and, therefore, not libelous.

Although much of the discussion in the briefs centers around the constitutional issues, defendant's claim that the trial court abused its discretion in refusing to allow amendment is dispositive. Defendant initially filed his motion to amend his answer on April 7, 1978, where he sought to add the affirmative defenses of truth, privilege, and fair comment. Prior to ruling on defendant's motion, the trial court granted a continuance of the trial until August 7, 1978. On July 31, 1978, the trial court allowed the defendant to add the affirmative defense of truth but not those of privilege and fair comment. No reasons are stated by the trial court for its disparate treatment of the affirmative defenses raised. However, since the trial court did not see timeliness as a bar to the addition of the truth defense, it would appear that the trial court felt that the other two affirmative defenses were not applicable to the facts herein.

■ By pleading the affirmative defense of privilege, it appears that the defendant refers to the qualified privilege recognized in *Ward v. Ares*, 29 N.M. 418, 223 P. 766 (1924). In *Mahona-Jojanto, Inc., N. S. L. v. Bank of New Mexico*, 79 N.M. 293, 295–296, 442 P.2d 783 (1968), the Supreme Court defined this qualified privilege as follows:

An occasion giving rise to the privilege is one consisting of a good faith publication in the discharge of a public or private duty when the same is legally or morally motivated.

Therefore, this privilege has the requirement of good faith. The trial court specifically found that the letter in question was "calculated to and did in fact hold the plaintiffs in public ridicule, hatred and contempt", and "published in willful disregard of the rights of the parties." Therefore, the good-faith based defense of privilege defense was unavailable to the defendant.

■ The common law privilege of fair comment has long been recognized by the courts and commentators. The privilege generally is stated to apply to all discussion and communication involving matters of public or general concern. Prosser, *The Law of Torts*, pp. 822–823 (1971). When the comment is directed to public officials or public figures, the United States Supreme Court has elevated this common law privilege to constitutional proportions. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In *Times, supra*, at 376 U.S. 269–270, 84 S.Ct. 720–721, the Supreme Court discussed the rationale and policy underlying the privilege of fair comment:

The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498. "The maintenance of the opportunity for free political discussion to the end that government may be responsive

to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system." *Stromberg v. California*, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117. "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions," *Bridges v. California*, 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192, and this opportunity is to be afforded for "vigorous advocacy" no less than "abstract discussion." *N. A. A. C. P. v. Button*, 371 U.S. 415, 429, 83 S.Ct. 328 [335], 9 L.Ed.2d 405.

Although it is clear that the constitutional privilege has not been extended beyond cases in which public figures or public officials are involved, *Gertz, supra*, and that the plaintiffs herein are neither public figures nor public officials, *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), the common law privilege has been applied to cases where the communication relates to work being paid for out of public funds.[1] In *Bishop v. Wometco Enterprises, Inc.*, 235 So.2d 759 (Fla.App.1970) the court stated that where one brings himself into the public arena, regardless of whether he is a public official, a public figure or involved in a matter of public interest, a qualified privilege is created in the communicator. We agree; the common law privilege is available to one who comments and communicates regarding a matter of public interest where the subject of that commentary has voluntarily sought and acquired a government contract. *See* Mr. Justice Brennan's plurality opinion, for the Court, in *Rosenbloom v. Metro Media*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

As the Florida court, in *Bishop*, pointed out, this is but a qualified privilege and will only isolate the defendant from

liability so long as there is no proof of actual malice, as defined in *New York Times v. Sullivan, supra*. Professor Prosser in his treatise on Torts states that the malice standard as defined in the *Times* case is the appropriate standard to qualify the common law privilege. *Prosser, supra,* at 821–823. Prosser explains that the "malice" standard developed in *New York Times, supra*, and its prodigy is not a bad faith or malice standard at all, but actually only involves scienter. It is not the defendant's desire to injure the plaintiff that destroys the privilege, but rather that the defendant makes his statement "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 279–280, 84 S.Ct. 725–726. Professor Prosser, *supra*, at 821, states:

> Two subsequent decisions of the Supreme Court [*Henry v. Collins*, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892, and *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262] reiterated the new requirement and definition of "malice," holding that actual ill will and a desire to do harm was not sufficient to defeat the privilege, nor was mere negligence in publishing the defamation without verification; and that it could be defeated only by the plaintiff's proof of knowledge of falsity or reckless disregard of the truth.
>
> It is certainly highly unfortunate that the Court chose to cling to the discredited term "malice," which has meant all things to all men, and is here highly misleading. A much better word would have been "scienter," since the state of mind required is obviously the same as in deceit actions for intentional misrepresentation. Where this is proved, there is no doubt that there can still be liability.

Therefore, the trial court's finding of defendant's bad faith and ill will toward the plaintiffs does not preclude this defense.

---

1. *Bishop v. Wometco Enterprises, Inc.*, 235 So.2d 759 (Fla.App.1970) (preferential tax treatment); *Grell v. Hoard*, 206 Wis. 187, 239 N.W. 428 (1931) (ineffective and wasteful expenditure of public money in the building of highways); *Holway v. World Publishing Company*, 171 Okl. 306, 444 P.2d 881 (1935) (excessive public spending in compensation of con-

sulting engineer); *Bailey v. Charleston Mail Association*, 126 W.Va. 292, 27 S.E.2d 837 (1943) (criticism of excess public spending in purchase of bridge by state); and *Yancey v. Gillespie*, 242 N.C. 227, 87 S.E.2d 210 (1955) (excessive public expenditure to acquire a "shabby lot.")

The Rules of Civil Procedure should not be a means of denying parties their right to reach the substance of their claims or defenses. The purpose of the Rules of Civil Procedure is to allow cases to be disposed of on the merits and not on technicalities. *Hambaugh v. Peoples,* 75 N.M. 144, 149, 401 P.2d 777 (1965). In *Martinez v. Research Park, Inc.,* 75 N.M. 672, 679–680, 410 P.2d 200 (1965), the New Mexico Supreme Court stated: "The law has long recognized the principle that amendments to pleadings are favored and that the right thereto should be liberally permitted in the furtherance of justice." In the instant case, the essence of defendant's argument is that he was attempting to inform certain key members of the public of what he thought to be a transgression of New Mexico law regarding a project to be funded by the public. To deny the defendant the right to amend his answer to add the defense of fair comment served to deny his right to present an effective defense. In *Fairfield v. Hamilton,* 206 Cal.App.2d 594, 24 Cal.Rptr. 73 (1962) the court discussed a similar situation and stated:

> Since a defendant in a libel action can neither defend on the ground of truth, nor offer proof thereof by way of mitigation, unless he had affirmatively pleaded such matter [citation omitted] depriving the defendant of the opportunity so to do in an appropriate case would undoubtedly prevent him from having a fair trial.

Additionally, it is clear to us from the fact that the trial court allowed the amendment of the defense of truth but not that of fair comment, that the trial court did not fully comprehend the full import to be accorded the defense of fair comment, as that was the heart of defendant's case. That being the case, we find that the trial court's actions in failing to allow the defendant to amend his answer to add the affirmative defense of fair comment was, under the facts of this case, an abuse of discretion. We therefore reverse the trial court. *Vernon Company v. Reed,* 78 N.M. 554, 555, 434 P.2d 376 (1967).

The judgment below is reversed and a new trial ordered.

IT IS SO ORDERED.

HENDLEY and WALTERS, JJ., concur.