648 P.2d 321

William C. MARCHIONDO,
Plaintiff-Appellant,

v.

NEW MEXICO STATE TRIBUNE
COMPANY, Defendant-Appellee,

and

Robert A. Brown, et al.,
Defendants-Appellees

and

The Republican Party of the State of
New Mexico, Third Party
Defendant-Appellee.

Nos. 5059, 5061.

Court of Appeals of New Mexico.

Dec. 22, 1981.

Rehearing Denied Jan. 6, 1982.

Certiorari Quashed June 29, 1982.

Michael E. Vigil, Albuquerque, for plaintiff-appellant.

Robert H. Clark, John B. Tittmann, Keleher & McLeod, Albuquerque, for New Mexico State Tribune Co., defendant-appellee.

Eric D. Lanphere, Michael A. Gross, Johnson & Lanphere, Albuquerque, for Robert A. Brown, et al., defendants-appellees.

Thomas F. McKenna, Albuquerque, for third party defendant-appellee.

## OPINION

DONNELLY, Judge.

Plaintiff, William Marchiondo, filed two separate actions seeking damages against the Albuquerque Tribune, the Albuquerque Journal, its editor Robert Brown, and certain other Journal employees, alleging publication of one count of libel by the Tribune and four counts of libel by the Journal and its employees. The defendants have denied that any of the publications were defamatory, and have raised the defenses of constitutional privilege, fair comment and failure to state a claim. The Tribune filed a third-party complaint against the Republican Party of New Mexico, as originator of one of the alleged defamatory publications, seeking indemnity in the event the publication printed by the Tribune is determined to be libelous.

The trial court granted motions of the Tribune and Republican Party for summary judgment for the publication that appeared in the Tribune, granted motions of the Journal and its employees for summary judgment and failure to state a claim on two counts, and denied the Journal's motions on two remaining counts of plaintiff's complaint. From orders of the trial court dismissing these two causes of action, we granted plaintiff's two applications for interlocutory appeals, which have been consolidated. We affirm the rulings of the trial court involved in these appeals.

The publications which gave rise to the litigation involved in these appeals concern: (1) a paid political advertisement entitled "Cronies," one of a series of political publications prepared by the Republican Party which appeared in editions of both the Tribune and Journal, and (2) a column entitled "McBride Might Not Be Eligible," written by defendant Bob Brown, a Journal editor, which appeared only in the Journal.

Although the Journal has been sued for two other allegedly libelous publications concerning the plaintiff, these claims are presently pending trial and are not involved in the appeal. Additionally, two other interlocutory appeals arising out of the two counts pending trial are presently before the New Mexico Supreme Court. *Marchiondo v. Brown*, 95 N.M. 651, 625 P.2d 580 (1981).

Each of the alleged defamatory publications referred to Democratic gubernatorial candidate Jerry Apodaca and discussed pos-

sible political appointments he might make if elected governor. The "Cronies" advertisement asserted that Apodaca had a lot of cronies and that, if elected, he would appoint such individuals to positions in state government; that such cronies were part of the political spoils system, dependent upon state jobs and state contracts to keep their "political muscle;" and that they would expect "a piece of the action" if Apodaca was elected governor. The advertisement also alleged that, if elected, Apodaca would be the "kind of governor who would appoint Billy Marchiondo as Chairman of the New Mexico Racing Commission."

The editorial column "McBride Might Not Be Eligible" was published by the Journal on December 26, 1974, after the election of Governor Apodaca, but prior to his taking office officially. The article discussed the governor-elect's proposed appointment of State Senator Robert McBride to a position as district judge in Bernalillo County. The article questioned the legality of the appointment because Senator McBride was then serving as a state senator, and the New Mexico Constitution prohibits the appointment of a state legislator to a state civil office during the term for which he was elected. Included in the article was a paragraph specifically referring to plaintiff. The reference provided in part, "The political implications in McBride's appointment bother us as does his having received financial support in at least one past election from well known defense attorney, William Marchiondo."

The trial court, dismissing with prejudice all causes of action based upon the "McBride" column and the "Cronies" advertisement, entered specific written findings that:

1. *Editorial—McBride may not be eligible.* Defendants' Motion to Dismiss should be granted. The reference to plaintiff is not libelous per se; the contribution to McBride is admitted by plaintiff; is a matter of public record and publication thereof is privileged. The statement complained of is an idea or opinion and is constitutionally protected.

\* \* \* \* \* \*

3. *Paid political advertisement—Cronies.* The Motion to Dismiss and/or for Summary Judgment should be granted. The advertisement is not libelous; is a statement of opinion, and is constitutionally protected.

■ If matters outside the pleadings are presented and accepted by the trial court in deciding a motion for failure to state a claim under N.M.R.Civ.P. 12(b)(6), the motion is treated as one for summary judgment.

On appeal, plaintiff asserts that: (1) the "Cronies" advertisement was not an expression of constitutionally protected opinion and is libelous per se; (2) the McBride editorial column was not a constitutionally protected opinion and was libelous per se.

I. *The "Cronies" Advertisement :*

The political advertisement entitled "Cronies," occupied a quarter page of both the Tribune and Journal newspapers. It was written and paid for by the Republican Party of New Mexico. The thrust of the advertisement was directed against the Democratic gubernatorial candidacy of Jerry Apodaca, and appeared just prior to the state general election in 1974. The concluding three paragraphs of the publication, although primarily directed at the Democratic Party's candidate for governor, specifically referred to the plaintiff in the final paragraph. It provided in part:

What kind of Governor would Jerry Apodaca be? He'd be the kind of Governor who puts his cronies in state government—who bends the law to accommodate them, or who changes the law to make room for them.

Jerry Apodaca would be the kind of Governor who would listen to his cronies—especially the ones who supported him so heavily in this campaign. He would make his decisions based on political expediency.

Jerry Apodaca would be the kind of Governor who would appoint Billy Marchiondo as Chairman of the New Mexico

Racing Commission. That's why we say he's the man nobody can afford.

Plaintiff asserts that the trial court erred in its determination that the "Cronies" advertisement was not defamatory, and erred in ruling that the publication was constitutionally protected speech or privileged as a statement or opinion. Plaintiff contends that the publication imputed that plaintiff was a person who could coerce the governor to "bend the law to accommodate him," that he would encourage such actions and attempt to profit thereby, that he was alleged to be unqualified for an appointment to the State Racing Commission, that he was a "political hack who has tried to control New Mexico politics for years," and that the publication falsely imputed that he was not a qualified and reputable attorney.

Defendants pled as affirmative defenses that the advertisement was a statement of constitutionally protected opinion and fair comment; that even if the publication were deemed to be libelous, the material was not libel per se, but only libel per quod; and that plaintiff failed to properly plead a claim of special damages, essential to support a claim of libel per quod.

We discuss: (a) whether the publication was libelous per se; (b) whether the complaint properly pled a cause of action in libel per quod; (c) whether the advertisement is constitutionally protected as a statement of opinion; and (d) the defense of fair comment.

a) *Claim of Libel Per Se*:

■ Consideration of whether published material is capable of a defamatory meaning is initially a question of law. *Southard v. Forbes, Inc.*, 588 F.2d 140 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979); *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081 (E.D.Pa.1980); *Westby v. Madison Newspapers, Inc.*, 81 Wis.2d 1, 259 N.W.2d 691 (1977). It is a matter of law for the court to determine if a publication is libelous per se, as opposed to a fact determination for the fact finder as to the publication being libelous per quod. *Akins v. Altus Newspapers, Inc.*, 609 P.2d 1263 (Okl.1977);

*McKenney v. Carpenter*, 42 Okl. 410, 141 P. 779 (1914).

The test of whether a publication is libelous per se was set forth in *Colbert v. Journal Publishing Co.*, 19 N.M. 156, 142 P. 146 (1914), where the court enunciated the rule that "[a]ny false and malicious writing published of another is libelous per se, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." This test was followed in *McGaw v. Webster*, 79 N.M. 104, 440 P.2d 296 (1968); *Chase v. New Mexico Publishing Co.*, 53 N.M. 145, 203 P.2d 594 (1949); *Wood v. Hannett*, 35 N.M. 23, 289 P. 590 (1930); *Ward v. Ares*, 29 N.M. 418, 223 P. 766 (1924); *Thomas v. Frost*, 79 N.M. 125, 440 P.2d 800 (Ct.App.1968).

In *Monnin v. Wood*, 86 N.M. 460, 525 P.2d 387 (Ct.App.1974), it was stated:

To be libelous per se, the [publication] alone, without any reference to extrinsic facts, stripped of all insinuations, innuendos and explanatory circumstances, must tend to render the plaintiff contemptible or ridiculous in public estimation, or expose him of public hatred, contempt or disgrace. The language said to be libelous is to be given its plain and natural meaning and to be viewed in this court as people reading it would ordinarily understand and give it meaning without knowledge or use of any special facts or circumstances. The language must be susceptible of but a single meaning, and a defamatory meaning must be the only one of which the writing is susceptible. *McGaw v. Webster*, 79 N.M. 104, 440 P.2d 296 (1968); *Chase v. New Mexico Publ. Co.*, 53 N.M. 145, 203 P.2d 594 (1949). Defamatory character will not be given the words unless this is their plain and obvious import, and the language will receive an innocent interpretation where fairly susceptible to it. *Perea v. First State Bank*, 84 N.M. 326, 503 P.2d 150 (Ct.App. 1972).

■ In both slander and libel actions, New Mexico has adopted the rule that a

statement is deemed to be defamatory per se, if, without reference to extrinsic matters and viewed in its plain and obvious meaning, the statement imputes to the plaintiff: (1) the commission of some criminal offense involving moral turpitude; (2) affliction with some loathsome disease, which would tend to exclude the person from society; (3) unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment; (4) some falsity which prejudices the plaintiff in his profession or trade; or (5) unchastity (of a woman). *Reed v. Melnick*, 81 N.M. 608, 471 P.2d 178, 49 A.L.R.3d 156 (1970); *Dillard v. Shattuck*, 36 N.M. 202, 11 P.2d 543 (1932); Comment, Torts-Libel and Slander-The Libel Per Se—Libel Per Quod Distinction in New Mexico, 4 Nat.Res.J. 590 (1964–65); *see* N.M.U.J.I.Civ. 10.5 Directions for Use, Committee Comments, N.M.S.A.1978 (Repl. 1980); *cf., McGaw v. Webster, supra; Del Rico v. New Mexican*, 56 N.M. 538, 246 P.2d 206 (1952).

The requirement that a per se libelous statement be susceptible of *only* a defamatory meaning, without reference to innuendo, colloquium or explanatory circumstances, has given rise to the "innocent meaning rule." Comment, Torts-Libel in New Mexico—*Reed v. Melnick*, 1 N.M.L.Rev. 615 (1971). The rule was first applied to distinguish between slander per se and per quod in *Dillard v. Shattuck, supra*, and then applied to libel in *Del Rico v. New Mexican, supra*. In *Dillard*, the court stated that: "[S]tatements, in order to be actionable per se, must be susceptible of but one meaning, and that an opprobrious and defamatory meaning." The court further added "[L]anguage claimed to be actionable will receive an innocent interpretation where fairly susceptible to it . . . This is but another way of saying that, where a per se slanderous character is sought to be impressed upon the claimed defamatory words, they will not be given such meaning unless this is their plain and obvious import." *See Monnin v. Wood, supra; Reed v. Melnick, supra*.

An objective reading of the "Cronies" advertisement, considering the plain and obvious meaning of the words employed, substantiates the trial court's ruling that the publication is not libelous per se toward plaintiff, but is dependent upon extrinsic innuendo or colloquium to explain its alleged defamatory character.

Guaged by the standards set out above, the "Cronies" publication is not libelous per se as to the plaintiff.

b) *Claim of Libel Per Quod* :

Libel per quod consists of written expressions which although not actionable upon their face, are (1) susceptible of two reasonable interpretations, one of which is defamatory and another which is innocent, or (2) publications which are not on their face defamatory, but which may become so when considered in connection with innuendos and explanatory circumstances. *See Monnin v. Wood, supra; McGaw v. Webster, supra; Del Rico v. New Mexican, supra*; Comment, 4 Nat.Res.J., *supra; Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938).

The Journal, relying upon *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), argues that if the "Cronies" publication is not libelous per se, but only per quod, special damages constitutes the sole basis for recovery. In such case, the Journal maintains, failure to allege special damages is defective and subject to dismissal.

In *Reed v. Melnick, supra*, the court enunciated the rule that where a publication is not libelous per se, and is subject to both innocent and defamatory meanings, the jury or fact finder must determine which meaning was understood by the recipients of the communication. The court held that where published statements are not libelous per se because their defamatory character can only be shown by reference to extrinsic facts, the plaintiff must *either* plead and prove special damages *or* show that the publisher knew or should have known the necessary extrinsic facts.

Plaintiff did not plead special damages, but asserted claims of general damages and alleged that the defendants knew or should have known the extrinsic facts sufficient to render such statements defamatory.

The Journal argues that the special exception recognized in *Reed*, has been eroded and rendered invalid due to the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc., supra.* This argument appears to have support in Chapter 10 of the Uniform Jury Instructions adopted by the New Mexico Supreme Court (applicable to cases filed on or after April 1, 1981), and relating to cases involving claims of libel or slander. N.M.U.J.I.Civ. 10.4, N.M.S.A.1978 (Repl.1980), requires proof that alleged defamatory statements "proximately caused special damages to the plaintiff," *and* the defendant negligently failed to exercise ordinary care in determining the truth or falsity of the word prior to communication. *Franklin v. Blank*, 86 N.M. 585, 525 P.2d 945 (1974).

As observed in the introductory discussion to the jury instructions, at N.M.U.J.I. 10.0, the drafting committee notes:

The law of libel and slander has taken on a federal constitutional aspect in recent years which needs to be reviewed * * * before finalizing jury instructions. Basically, the entire law of libel and slander needs to be restudied in the light of the decisions of the United States Supreme Court since 1964.

The New Mexico variation on the per se-per quod rule allowing pleading and proof of libel by extrinsic evidence without proof of special damages, has probably been overtaken by rulings of the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964), and its progeny down through *Gertz v. Robert Welch, Inc., supra.*[1]

The unique position of New Mexico regarding the allowance of claims of libel per quod without necessity of pleading and proof of special damages has been stated as follows:

A libel not defamatory on its face, but which becomes defamatory when its meaning is illuminated by proof of extrinsic facts is actionable per quod, unless the defamatory meaning of the statement falls within one of the four classes of slander actionable per se. It is ordinarily irrelevant, except in New Mexico, that the publisher knew of the extrinsic facts when he published the defamatory statement. In an action for libel per quod or for slander which does not fall into one of the four categories actionable as slander per se, there is no presumption of injury to reputation, and the plaintiff must plead and prove special damages, usually of a pecuniary nature.[2]

Under the rule in *Reed v. Melnick, supra*, plaintiff's failure to plead special damages is not fatal, since under the clear import of the holding in *Gertz v. Robert Welch, Inc.*, the states must require a showing of *either* (1) actual malice that is, that publication was made with reckless disregard of truth or falsity, *or* (2) a lower standard of fault *and* actual damages in suits by private persons against media defendants. Actual damages required by *Gertz* encompass only compensation for actual injury, not limited to out-of-pocket loss, and include harm to reputation, humiliation and mental anguish. *Gertz* requires that the injury must be proven, in contrast to the presumed damages for libel per se at common law, which could be awarded without any foundation in the evidence. The New Mexico special damages requirement is even narrower than the *Gertz* actual damages requirement: special damages encompass *only* pecuniary loss that is pled and proved with specificity. *Del Rico v. New Mexican, supra*; Sack, supra, VII.7.1. Under *Gertz*, punitive damages are not recoverable in actions by private persons against a media defendant if

---

1. See R. Sack, Libel, Slander and Related Problems, II.7.6.1 at 102 (1980).

2. Eaton, The American Law of Defamation Through *Gertz v. Robert Welch, Inc.*, and Beyond: An Analytical Primer, 61 Va.L.Rev. 1349 at 1355 (1975).

the defendant was merely negligent in failing to ascertain the falsity of the defamatory communication, and in the absence of proof of actual malice.

A strict hybrid of *Reed* and *Gertz* is adopted for libel per quod by N.M.U.J.I. 10.4, which imposes negligence as the standard of fault and requires a showing of special rather than actual damages.[3] By offering this protection *Gertz* may obviate the need for a libel per se—per quod distinction in libel actions brought by a private person. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412 (Tenn.1978); *see* Sack, Libel, Slander and Related Problems, *supra*, II. 7.7.1 at 110–111. Although it is clear that *Gertz'* dual requirement of fault and actual damage has an impact on the New Mexico alternative fault or special damage requirement enunciated in *Reed v. Melnick, supra*, we need not embark on such a protracted analysis. *Gertz* also enunciates constitutional privileges applicable to statements of opinion. We find such privilege directly applicable to the publication "Cronies."

### c) *Constitutionally Protected Opinion :*

Prior to the decision in *New York Times Co. v. Sullivan, supra*, the libel laws of the individual states evolved from the common law, largely free from any First Amendment considerations. In *New York Times*, however, the United States Supreme Court announced that constitutional guarantees require recognition of a federal rule that prohibits a *public official from recovering damages for a defamatory falsehood relating to his official conduct "unless he proves that the statement was made with 'actual malice'—that is with knowledge that it was false or with reckless disregard of whether it was false or not."*

In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court expanded the rule requiring proof of actual malice to apply to defamatory criticism of *"public figures."* More recently, in *Gertz*, the Court retreated from the earlier plurality opinion of *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), and held that the constitutional protections accorded the media in suits by public officers and public figures were more limited in suits by *"private individuals."* Judge Traub in this case found plaintiff to be a private individual.

The Court observed in *Gertz* that, because private individuals characteristically have fewer effective opportunities for rebuttal than do public officials and figures, they are more vulnerable to injury from defamation. Thus a different standard is applicable to libel actions brought by private individuals than those brought by public officials and public figures. Nevertheless a countervailing need for a vigorous and uninhibited press persuaded the Court to shield the media from strict liability and excessive damages for defamation of private individuals.

In brief outline, the Court in *Gertz* held: (1) public officials and public figures may recover for defamatory publications only upon clear and convincing proof that the defamatory falsehood was made with "actual malice," that is, with knowledge of its falsity or with reckless disregard of the truth; (2) the states may not impose liability without fault, but they are free to define the appropriate standard of fault required for recovery by private persons defamed by the news media, at least where substantial danger to an individual's reputation is evident from the statement on its face; and

---

**3.** The decision in *Gertz v. Robert Welch, Inc.*, *supra*, left to the individual states the choice of the appropriate standard as to the degree of fault which should be made applicable in libel actions brought by a private individual. Courts that have addressed this issue have divided, some requiring proof of actual malice, one state imposing a standard of "gross irresponsibility," and the majority of jurisdictions which have adopted the negligence standard. *See Seegmil-*

*ler v. K. S. L., Inc.*, Utah 2d, 626 P.2d 968 (1981); Comment, The Defamation Action for Private Individuals: The New Fault Standards, 22 S.D.L.Rev. 163, 172 (1977). R. Sack, Libel Slander and Related Problems, V.9.1, at 251. The New Mexico Uniform Jury Instructions apply the ordinary negligence standard. N.M.U.J. I.Civ. 10.4; *See also* Annot., 9 A.L.R.3d 559, § 6 at 565 (1966).

(3) a state's interest in protecting reputation extends no further than compensation for "actual injury," consequently, unless a private person defamed by the news media proves defamation based upon an "actual malice" standard, damages may not be presumed, and actual damages must be proved by a standard of "competent evidence."

■ Under the decisions of the United States Supreme Court, a plaintiff's status as either a public official, public figure, or private person is relevant in determining the standard by which an aggrieved party's proof of damages must be measured. The question of whether one is a "public figure" or a "private person" is a question of law, *Ammerman v. Hubbard Broadcasting Inc.*, 91 N.M. 250, 572 P.2d 1258 (Ct.App.), *cert. denied*, 91 N.M. 249, 572 P.2d 1257 (1977); *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Rebozo v. Washington Post*, 637 F.2d 375 (5th Cir. 1981); *see Fitzgerald v. Penthouse International, Ltd.*, 639 F.2d 1076 (4th Cir. 1981); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161 (1975).

■ Lawyers in their practice of law are not public figures. *Gertz v. Robert Welch, supra; Mauck, Stastny & Rassam, P. A. v. Bicknell*, 95 N.M. 702, 625 P.2d 1219 (Ct. App.1980).

Significantly, in redefining standards of libel applicable to private individuals, *Gertz* also enunciated the important principal that as a matter of constitutional law there can be no such thing as a false idea or opinion. The Court in such respect stated:

We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges or juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues.

■ Extension of constitutional protection under the First Amendment to opinions poses a new and novel difficulty in distinguishing between statements of fact and statements of opinion. Ideas and opinions, although incorrect or faulty in their premise, are protected by the United States Constitution. False statements of fact, whether intentionally or negligently published are unprotected. The problems inherent in distinguishing between "opinions" and "statements of fact" are discussed by Sack, *supra*, § IV.2 at 155–56:

No task undertaken under the law of defamation is any more elusive than distinguishing between the two.

Some statements are clearly statements of opinion: What ought to be done, the propriety or aesthetic or moral worth of some act or object. So, too, statements which explicitly assert that they are the writer's speculation rather than his knowledge, and which do not purport to set forth the facts underlying the speculation, may be statements of opinion * * *.

But statements of opinion are often couched in factual terms. Predications about the future, for example. * * * Conversely, statements are often understood to be statements of fact.

 * * * * * *

Debate about matters of public importance is itself of public importance. Freedom to comment, particularly in the arena of politics, is encouraged rather than suppressed as a matter of policy. Such protection is "indispensable to the exercise of freedom".

■ Whether a statement is privileged is a question of law for the court to decide. *Gengler v. Phelps*, 92 N.M. 465, 589 P.2d 1056 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1979); *Franklin v. Blank, supra; Stryker v. Barbers Super Markets, Inc.*, 81 N.M. 44, 462 P.2d 629 (Ct.App.1969); *Rosenblatt v. Baer, supra.* Thus the critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court to decide. *Gregory v. McDonnell Douglas*

*Corp.*, 17 Cal.3d 596, 131 Cal.Rptr. 641, 552 P.2d 425 (1976); *Bucher v. Roberts*, 198 Colo. 1, 595 P.2d 239 (1979), (*en banc*); *Slawik v. News-Journal Company*, 428 A.2d 15 (Del.Super.1981); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 397 N.Y.S.2d 943, 42 N.Y.2d 369, 366 N.E.2d 1299, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977); *Pease v. Telegraph Publishing Co., Inc.*, 121 N.H. 62, 426 A.2d 463 (1981). Where, however, an average reader could reasonably understand the statement as fact or opinion, some courts hold that the issue may properly be left to the jury's determination. *Myers v. Boston Magazine Co., Inc.*, 380 Mass. 336, 403 N.E.2d 376 (Mass.1980); *Good Government Group v. Superior Court*, 22 Cal.3d 672, 150 Cal.Rptr. 258, 586 P.2d 572 (1978), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

■ What constitutes a statement of opinion as distinguished from a statement of fact must be determined under the facts of each case and the language of the publication involved. Courts in other jurisdictions deciding similar cases have adopted certain rules to aid in the distinction. It necessarily involves consideration of the context of the entire publication and cannot focus solely upon portions thereof. *Southard v. Forbes, Inc.*, 588 F.2d 140 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979); *see Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272 (5th Cir. 1981); *Mashburn v. Collin*, 355 So.2d 879 (La.1977). The degree to which the truth or falsity of a statement can be objectively determined is another consideration. *Hotchner v. Castillo-Puche*, 551 F.2d 910 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977); *see, Burns v. Denver Post, Inc.*, 606 P.2d 1310 (Colo.Ct.App.1979). Moreover, the court in *Burns v. Denver Post* added that, "Once a court needs to speculate concerning the meaning that the statement purports to convey * * * we enter the area of opinion as opposed to factual assertion." A further factor to consider in distinguishing statements of fact from opinion is whether ordinary persons hearing or reading the matter perceive the statement as an expression of opinion rather than a statement of fact. *Mashburn v. Collin, supra; Gregory v. McDonnell Douglas Corp., supra; Rinaldi v. Holt, Rinehart & Winston, supra.*

■ A publication is not libelous merely because the opinion may be expressed in terms of strong invectives, profanity, or sarcastic language. *Good Government Group v. Superior Court, supra; see, Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Greenbelt Coop. Publishing Ass'n. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

■ Fiery political dialog, rhetoric, and public debate, including use of epithets and hyperbole, are sheltered under the First Amendment of the Federal Constitution. *See, Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *Gregory v. McDonnell Douglas Corp., supra; Myers v. Boston Magazine Co., Inc., supra; Pease v. Telegraph Publishing Co., supra.* Accusation of a crime, on the other hand, is not so protected. *Rinaldi v. Holt, Rinehart & Winston, supra.* But use of words in a loose pejorative sense is protected opinion. *Cianci v. New Times Publishing Co.*, 639 F.2d 54 (2d Cir. 1980); *Buckley v. Littell, supra.* In discussing the degree of protected afforded political opinions in defamation actions, *Sack, supra* notes, IV.2.5 at 160:

One of the cardinal reasons for protecting expression is to assure proper operation of the political process. Courts have been particularly willing to read political invective as mere opinion, privileged under the circumstances.

Statements similar to those made in the "Cronies" advertisement have been held to be protected statements of opinion. *Desert Sun Publishing Co. v. Superior Court, etc.*, 97 Cal.App.3d 49, 158 Cal.Rptr. 519 (Dist.Ct. App.1979) (plaintiff accused of political chicanery); *Gregory v. McDonnell Douglas Corp., supra,* (union officials were willing to sacrifice the interests of their union to further their own "political aspirations" and "personal ambitions"); *Salvo v. Salem*

*News,* 4 Media L.Rptr. 1856 (Mass.Dist.Ct. Essex 1978), (plaintiff's appointment to job "appeared" to have been repayment of political debt and made by a person who "demonstrated a penchant for cronyism"); *Rinaldi v. Holt, Rinehart & Winston, supra,* (a judge was incompetent and should be removed from office).

Plaintiff here further argues, however, that even if the "Cronies" advertisement is determined to be a statement of opinion, it is based on undisclosed facts and is defamatory under Restatement (Second) of Torts § 566 (1976). That section states, "A defamatory communication may consist of a statement in the form of an opinion, but a *statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.*" (Emphasis added).

An examination of the official comments to the section disposes of plaintiff's contention. *Comment b* explains that there are two types of opinion. "Pure" opinion exists where the comment is based on disclosed or assumed facts, known either because they have already been stated or because of their general notoriety. "Mixed" opinion exists where the statement gives rise to the inference that the opinion is based on undisclosed facts. *Comment c* states that the pure type of opinion is not actionable under *Gertz.* The mixed type of opinion is treated differently. If the statement implies the existence of undisclosed facts, the court determines if it might reasonably be understood to be based on undisclosed *defamatory facts.* This is similar to the innocent meaning rule, which may have been subsumed by this aspect of *Gertz.* See *Burns v. Denver Post, supra.*

In the instant case, the only undisclosed fact upon which the statement appears to be based is that plaintiff was a political supporter of Apodaca's. If we adopted the Restatement test, such an undisclosed fact is not a *defamatory fact* that could render the opinion actionable. The other implications that plaintiff attributes to the advertisement, for example, that "crony" means political hack or a person who bends the

law, or that plaintiff is unqualified to be a racing commissioner, are implications of uncomplimentary *opinions.* Such interpretations fall squarely within the standards for statements of opinion enunciated in *Rinaldi, supra; Gregory, supra; Salvo, supra*; and other cases we have discussed. Plaintiff is not accused of breaking the law; at most, he is the object of imprecisely defined political epithets.

The trial court granted both a motion to dismiss for failure to state a claim and a motion for summary judgment as to the "Cronies" advertisement as to each of the defendants. We think the trial court was correct.

■ In actions for alleged libel or defamation, motions to dismiss for failure to state a claim under Rule 12(b)(6) and summary judgment have been recognized as appropriate modes of obtaining dismissal of suits, where the published material is held as a matter of law to be privileged or constitutionally protected. *See, Ammerman v. Hubbard Broadcasting, Inc., supra; Mahona-Jojanto, Inc., N. S. L. v. Bank of New Mexico,* 79 N.M. 293, 442 P.2d 783 (1968); *McNutt v. N.M. State Tribune Co.,* 88 N.M. 162, 538 P.2d 804 (Ct.App.), *cert. denied,* 88 N.M. 318, 540 P.2d 248 (1975); *Franklin v. Blank, supra; Good Government Group v. Superior Court, supra; Slawik v. News Journal Co., supra; Myers v. Boston Magazine Company, Inc., supra; MacGuire v. Harrison Broadcasting Co.,* 612 P.2d 830 (Wyo.1980).

Summary judgment is admittedly a drastic device since its effect when exercised cuts off a party's right to present his case to the jury or fact finder. *Thompson v. Fahey,* 94 N.M. 35, 607 P.2d 122 (1980).

Nevertheless, as stated in *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980), courts have not hesitated to grant summary judgment, construing all the facts and inferences in favor of the opposing party, where the record demonstrates the opponent would not be entitled to have a jury verdict stand. *See also Time, Inc. v. McLaney,* 406 F.2d 565 (5th Cir.), *cert. denied,* 395 U.S. 922, 89 S.Ct.

1776, 23 L.Ed.2d 239 (1969). In *Dupler*, the court stated:

> Summary procedures are especially appropriate in the First Amendment area. The threat of being put to the defense of a lawsuit * * * may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself * * *. Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors. And to this extent debate on public issues and the conduct of public officials will become less inhibited, less robust, and less wide-open, for self-censorship affecting the whole public is "hardly less virulent for being privately administered." *Washington Post Co. v. Keogh* (C.A.D.C.1966), 365 F.2d 965, 968.

■ In the instant case, we have examined the pleadings, the affidavits filed by the parties, and the voluminous and numerous depositions that comprise the record in this case. Nothing indicates that a reader would reasonably read "Cronies" as anything other than a partisan political opinion. We are mindful of the standards of *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972), for testing the existence of genuine issues of material fact, and we determine as a matter of law the trial court was correct in its ruling that the "Cronies" publication is constitutionally protected as a statement of opinion.

d) *Defense of Fair Comment*:

■ Defendants also assert the defense of "fair comment" to the "Cronies" advertisement. The common law defense of "fair comment" is predicated upon the principle that the interests of society are furthered through a free discussion of public affairs and matters of public interest. The rule normally requires that the publication relate to a matter of public interest; it cannot impute dishonorable motives to its subject; and it must reflect expression of opinion on truly-stated facts. *See Golden North Airways, Inc. v. Tanana Publishing Co.*, 15 Alaska 303, 218 F.2d 612 (9th Cir. 1955); *Fisher v. Washington Post Co.*, 212 A.2d 335 (D.C.App.1965).

■ The privilege of stating opinions under the ruling in *New York Times v. Sullivan, supra*, and *Gertz v. Robert Welch, Inc., supra*, has expanded the common law conditional privilege of "fair comment," not only to permit expressions of opinion, but to include inaccurate or misleading statements of fact, unless made with "actual" malice. If the fact-finder finds actual malice, the defense of fair comment is defeated under *New York Times v. Sullivan*:

> Since the Fourteenth Amendment requires recognition of the conditional privilege for honest misstatements of fact, it follows that a defense of fair comment must be afforded for honest expression of opinion based upon privileged, as well as true, statements of fact. Both defenses are of course defeasible if the public official proves actual malice, as was not done here.

■ Thus, to overcome the defense of fair comment, plaintiff must prove the alleged defamatory opinion was published with actual malice. *Fisher v. Washington Post Co., supra; Phoenix Newspapers, Inc. v. Church*, 103 Ariz. 582, 447 P.2d 840 (1968), *cert. denied*, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969).

The fair comment defense has been recognized in New Mexico, at least as available to one who comments on a matter of public interest where the subject of the commentary sought and acquired a government contract. *Mauck, Stastny & Rassam, P. A. v. Bicknell, supra; see also* Note, Libel—The Defenses of Fair Comment and Qualified Privilege, 11 N.M. 1.Rev. 243 (1981). The court in *Mauck* indicated that the privilege not only is applicable to statements about public officials or figures, but also encompasses comments on matters of public concern.

■ The defense of "fair comment" as expanded by the decision in *Gertz*, is applicable to the "Cronies" publication. The trial court in its order granting summary

judgment found after a careful examination of the pleadings, affidavits, and the record before it, an absence of facts to support the claim of "actual malice." Such determination in part supported the court's determination of summary judgment as to "Cronies." The trial court may grant such a motion where there is a failure to show the existence of material fact to prove the existence of "malice" in publication of the statement that is allegedly defamatory. *Cole Fisher Rogow, Inc., v. Carl Ally, Inc.,* 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (Ct.App.1969).

The defense of "fair comment" appears to have been enveloped by *Gertz'* recognition of an indefeasible First Amendment privilege protecting expression of opinions and ideas. Sack, *supra,* II.1.2 at 41 and IV.4.3 at 180; *see Ollman v. Evans,* 479 F.Supp. 292 (D.C.D.C.1979). This is also indicated by Restatement of Torts (Second) § 566 (1976), and (First) § 606–610 (1938).

Applying the standards enunciated in *Reed v. Melnick, supra,* the constitutional limitations stated in *Gertz,* as well as the standards for granting summary judgment and motions to dismiss for failure to state a cause of action, Judge Traub correctly granted the motion to dismiss for failure to state a cause of action as to the "Cronies" advertisement on the basis that it was a statement of opinion or expression of ideas, and as such was as a matter of law constitutionally protected.

II. *The "McBride" Column* :

Plaintiff challenges the correctness of the trial court's dismissal for failure to state a claim as to the "McBride" publication, published solely by the defendant Albuquerque Journal under the by-line of the defendant Brown.

The Journal and Brown have raised essentially a two-pronged defense: (1) the article is not libelous per se; (2) the material is constitutionally privileged as an idea or opinion.

 Whether a publication is susceptible of a libelous meaning is initially a question of law. *Southard v. Forbes, supra;*

*Fogel v. Forbes, supra; Gregory v. McDonnell Douglas Corp., supra; James v. Gannett Co., Inc.,* 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834 (Ct.App.1976). We look to the language and context of the article itself.

The publication complained of consisted of a two-column article which appeared in the daily edition of the Journal on December 26, 1974, bearing the headline "For Judgeship, McBride Might Not Be Eligible." The text of the column consisted of 17 paragraphs discussing the legality of the appointment of State Senator Robert McBride to the position of state district judge. The article read in part:

It will be interesting to see how the legal beagles get around a section of the state constitution which seems to say clearly that State Senator Robert McBride can't be appointed to the district court bench in Bernalillo County.

However, assurances have been given that a way has been found and that there may even be an old attorney general's opinion on the subject. McBride, himself has said that all indications are that the appointment would be legal.

Just for the record, McBride is completing his first four-year term as a senator on December 31st. He was elected in November for a second term and his election has been certified.

Section 28 of Article IV of the Constitution reads: "No member of the legislature shall, during the term for which he was elected, be appointed to any civil office in this state." And it continues "nor shall be within one year thereafter be appointed to any civil office created, or the emoluments of which are increased during such term."

This would lead the average layman to believe that McBride is in trouble on two fronts—his appointment seems to be coming up during a term to which he has been elected and it seems to be coming up within a year of the term in which the legislature boosted judicial emoluments.

\* \* \* \* \* \*

THE POLITICAL implications in McBride's appointment bother us, as does

his having received financial support in at least one past election from well-known defense attorney, William Marchiondo. As a strong supporter of Governor-elect Jerry Apodaca, he has been receiving a push from Bernalillo County Democratic Chairman, Ed Romero.

Plaintiff alleges that this publication meant that "plaintiff, by reason of his prior support of Judge Robert H. McBride's senatorial candidacy, would attempt to corrupt and pervert the dispensation of justice in Judge McBride's judicial functions, and thereby meaning that plaintiff has attempted to corrupt the dispensation of justice before any and all other judges in the exercise of their judicial functions."

Plaintiff further pled that such publication was false and was intended by defendants to adversely affect him in his profession, and that defendants, at the time of publication, knew or should have known of extrinsic facts which made the publication defamatory in its innuendo, as well as per se. Plaintiff alleged damages resulting from the publication in the sum of $1,000,000.00.

Evaluation of the "McBride" article in light of the guidelines already discussed reveals that the matters contained therein are statements of opinion. While not solely determinative, the publication of the article on the editorial page in a position generally devoted to opinions is of further weight. The article contained qualifying phrases in various portions of the text thereof, "this would lead the average layman to believe," "if this is true," "seems to be," and "political implications in McBride's appointment *bother us.*" Such phrases do not automatically insulate the publication, but assist in the identification of the material as a statement of opinion.

■ Appellant has not denied the financial contribution referred to in the "McBride" publication. Since judges in New Mexico run in partisan elections, it is not improper for newspapers to comment or publish truthfully on the subject of the elective or appointive process, and on the matter of campaign contributions to judicial candidates. Indeed, a former judge has

written on the problems inherent in judicial candidates receiving financial contributions. Spaeth, Reflection on a Judicial Campaign, 60 Judicature 10 (June 1976).

■ Evaluation of the "McBride" article in light of the constitutional qualified privileges of the First Amendment indicates that such publication is as a matter of law, a protected expression of opinion, and not actionable in libel, as recognized in *Gertz v. Robert Welch, Inc., supra; Burns v. Denver Post, Inc., supra; Slawik v. News-Journal Co., supra; National Ass'n. of Gov't. Employees v. Central Broadcasting Corp.,* 379 Mass. 220, 396 N.E.2d 996 (1979) *cert. denied,* 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980).

Defendants have also pled fair comment as a defense to the "McBride" column. It is not necessary to consider this defense, however, as we have determined that the publication is opinion within the constitutional protection of *Gertz.*

The orders of the trial court dismissing plaintiff's causes of action as to the "Cronies" and the "McBride" publications are affirmed. Defendants are awarded costs of this appeal.

HENDLEY, J., concurs.

SUTIN, J., specially concurs.