656 P.2d 896

**CORONADO CREDIT UNION and New Mexico Credit Union Share Insurance Corporation, Plaintiffs-Appellants,**

v.

**KOAT TELEVISION, INC., Defendant-Appellee.**

**No. 5530.**

Court of Appeals of New Mexico.

Nov. 18, 1982.

Rehearing Denied Dec. 3, 1982.

234

Marianne Woodard, Sutin, Thayer & Browne, P.C., Albuquerque, for plaintiffs-appellants.

Victor R. Marshall, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

The plaintiffs Coronado Credit Union (Coronado) and New Mexico Credit Union Share Insurance Corporation appeal from an order granting summary judgment to defendant KOAT–TV, Inc., (KOAT–TV) and which dismissed their complaint for defamation.

Plaintiffs have raised three issues on appeal: (1) the trial court erred in granting summary judgment because KOAT–TV's broadcast contained false and defamatory statements of fact; (2) the court erred in

determining that plaintiff was required to prove KOAT–TV acted with malice; and (3) the court erred in granting summary judgment because of the existence of issues of fact as to whether KOAT–TV abused any conditional privilege in its publication of the alleged defamatory statements. We discuss plaintiff's first and third points jointly. We affirm in part and reverse in part.

FACTS

On July 17, 1980, KOAT–TV aired statements and interviews on both its 6:00 p.m. and 10:00 p.m. news programs containing both statements of fact and opinion concerning the financial status of Coronado Credit Union. At the time of these broadcasts Coronado was a state chartered credit union and served a membership of approximately 4,000 persons comprised of present and former employees of the University of New Mexico.

The July 17, 1980, 6:00 p.m. broadcast of KOAT–TV concluded with the following statements:

THE COMPREHENSIVE AUDIT REPORT [on Coronado] IS DUE IN SIX TO EIGHT WEEKS. IT WILL LIKELY SHOW A VERY LOPSIDED BALANCE SHEET. EVEN THE MOST OPTIMISTIC SOURCES SAY THAT THIS INSTITUTION'S LIABILITIES WILL FAR OUTWEIGH ITS ASSETS. IT WILL APPARENTLY BE UP TO BONDING COMPANIES AND INSURANCE CORPORATIONS TO PUT THIS CREDIT UNION ON ITS FEET. JANET BLAIR, ACTION 7 NEWS.

In addition to stating factors which allegedly led to plaintiff's financial difficulties, KOAT–TV also used direct quotes and video tapes of portions of conversations by Janet Blair with Alfred Chavez, Coronado's board president, and Joseph Goldberg, a board member. Videotaped conversations of both Chavez and Goldberg included in the broadcast assured depositors that the credit union was not insolvent, that despite Coronado's financial problems no one would lose his deposits, and that credit union deposits were insured. The film used during the broadcasts also showed signs located at the credit union indicating that deposits were insured.

After the airing of these broadcasts by KOAT–TV, plaintiff's customers began a run on the credit union to withdraw their deposits. In excess of one-half million dollars was withdrawn from Coronado within four business days following the newscasts. KOAT–TV ran a follow-up story on July 18, 1980, quoting officers of the credit union as saying that a run of depositors had begun to make withdrawals due to the news coverage, but reiterating that deposits with the institution were insured.

Plaintiff filed suit against KOAT–TV on August 8, 1980, setting out three separate claims against defendant. Count one alleged defendant had published patently defamatory statements against plaintiff which were either libelous or slanderous per se. The only specifically pleaded statements alleged to have been defamatory were that "the Plaintiff was insolvent because its liabilities currently exceeded its assets" and that "as a result of financial problems the Plaintiff would be placed in the hands of its bonding company." Count two alleged defendant published statements which defendant either knew or should have known by extrinsic facts were libelous or slanderous toward plaintiff. Count three alleged defendants either knew that the statements published by them about plaintiff were false and defamatory, or in the alternative defendant failed to exercise due care to prevent publication of the statements and recklessly disregarded whether the statements were false. Each count of plaintiff's complaint claimed compensatory damages of $1,500,000; count three prayed for $500,000 punitive damages.

KOAT–TV's answer admitted having made the statements involved but denied that the statements were false. KOAT–TV also pleaded affirmative defenses of truth, that in publishing the statements it acted without actual malice, and that its comments were privileged and constituted "fair comment."

KOAT–TV moved for summary judgment and attached to its motion an affidavit signed by Janet Blair, the news reporter who covered the story which gave rise to this litigation. The affidavit stated, among other things, that in investigating the story Blair obtained copies of the unaudited financial statements of the credit union from the Public Information Office of the University of New Mexico and a copy of a letter from Coronado dated July 11, 1980, addressed to its members which discussed the current financial problems of Coronado.

The Blair affidavit further stated that in reporting the story she had no intention of injuring Coronado and that the information utilized in the broadcast by KOAT–TV was based upon information she obtained from three persons: (1) Alfred Chavez, (2) Joseph Goldberg, and (3) a secret source whose identity was not revealed. Janet Blair refused to disclose the identity of the confidential news source which she stated she had also relied upon in preparing the story. Plaintiff moved to compel her to disclose this source, but the motion was not filed until after the hearing on summary judgment and was not ruled upon.

The Blair affidavit also had attached thereto a copy of the July 11, 1980, letter of Coronado to its membership, and a true copy of an audit report by Peat, Marwick, Mitchell & Co. reporting plaintiff's financial status as of March 31, 1980. The audit report was prepared after the alleged defamatory broadcasts and reflected that the credit union had invested in securities at a cost of $2,542,247.00 and that the market value of the securities had declined to $2,048,657.00, indicating a loss of approximately $493,590.00. In addition, the Blair affidavit stated that in her opinion the true capital deficit of Coronado was understated in plaintiff's own unaudited balance sheet because it did not contain any statement of possible loan losses which, if in fact sustained, would result in Coronado's liabilities actually exceeding the assets reported on plaintiff's balance sheet and which indicated $70,000 in equity. Blair stated that the sum of $569,291.00 was listed as plaintiff's capital loss on the Peat, Marwick report; she felt loan losses, which Peat, Marwick did not analyze would have increased this figure.

Coronado filed opposing affidavits to the motion for summary judgment and included affidavits from Alfred Chavez and Joseph Goldberg. The Chavez and Goldberg affidavits denied that Blair had ever been told by them that plaintiff's liabilities would in fact exceed its assets or that Coronado's balance sheet would be "lopsided."

During the hearing on the motion for summary judgment, plaintiff admitted that prior to the broadcasts complained of the existence of some delinquent loans and other financial problems had led to the termination of its previous manager and the filing of a lawsuit against him. Coronado further admitted that after the broadcasts were made, it experienced a large run of withdrawals resulting in serious financial problems. It claimed that this result was directly due to the defamatory statements of KOAT–TV and the truth of defendant's statements about its financial condition should be evaluated as of the date of the broadcasts, July 17, 1980, not the date of the audit after the harm had resulted from the broadcasts.

After a hearing, the trial court granted KOAT–TV's motion for summary judgment. In its order dismissing Coronado's complaint, the court made findings that (1) Coronado, for purposes of the libel action, was deemed to be a "public figure"; (2) the broadcasts by KOAT–TV were aired without malice; (3) the reports in question were substantially true; (4) the alleged defamatory reports were made in good faith; and (5) KOAT–TV exercised due care in making its reports concerning Coronado. In addition, the court concluded that plaintiff's financial problems were legitimate matters of public interest and concern.

DISCUSSION

I. *Did KOAT–TV's Broadcasts Include False and Defamatory Statements of Fact?*

Coronado claims that none of KOAT–TV's news sources nor any of the documen-

tary material obtained by it indicated that the credit union's liabilities in fact exceeded its assets. Coronado also asserted that, as shown by the affidavits of Chavez and Goldberg, neither of them stated in their interviews given to KOAT–TV that the credit union's liabilities would exceed its assets. Coronado further claimed that KOAT–TV improperly used its interview with Chavez and Goldberg to lend credence to its statements made in the broadcast and that the trial court erred in granting summary judgment because a material issue of fact exists as to whether its liabilities would have "far outweighed its assets" except for a run of withdrawals made by its members and caused by the news broadcasts of KOAT–TV.

Plaintiffs argue that virtually all of the alleged defamatory statements contained in the broadcast by KOAT–TV were couched in terms of fact and not opinion.[1] In *Kutz v. Independent Pub. Co., Inc.,* 97 N.M. 243, 638 P.2d 1088 (Ct.App.1981), plaintiff (a private person) filed suit against a newspaper alleging that an article which mentioned him by name was libelous and had damaged him. The trial court dismissed plaintiff's complaint on summary judgment. Defendant asserted that the article was a statement of opinion and therefore absolutely privileged. On appeal this court reversed the summary judgment holding:

> The defense to a claim of libel entails several considerations, principal among which is whether the statement is opinion or a false statement of fact. If it is opinion only it is a privileged communication; but if it is a false statement of fact, it is "not worthy of constitutional protection" and it may subject the publisher to liability. (quoting, *Gertz v. Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1971)).

In the *Kutz* decision, the court relied on the ruling in *Gertz* which held that a pure statement of opinion, even though false, was not defamatory and was constitutional-ly protected under the sweep of the First Amendment to the United States Constitution. *Kutz* held that summary judgment was improper because a material issue of fact existed as to whether portions of the article contained false statements of fact and that the alleged defamatory language was not purely a statement of opinion. In *Kutz,* the court relying upon *Gertz,* also held that determination of whether a statement constitutes opinion or fact is a matter of law for the court to decide. *Kutz* held that a statement of opinion is absolutely privileged when the facts upon which the opinion is based are fully set forth in the published communication. However, liability for defamation may attach when negative statements of a person are coupled with a clear but false implication that the writer is privy to negative facts about a person that are not set out in the communication. *Id.*

[1] Coronado claims the statements in the broadcast of KOAT–TV falsely imputed that the credit union was insolvent, and that, although it was experiencing major financial problems, these problems had stabilized and its difficulties were not as bad as depicted by KOAT–TV. Coronado asserts that as a direct result of the false depiction of its financial status by KOAT–TV, it sustained substantial monetary losses. A corporation may maintain an action for libel or slander if it has been defamed by a false imputation about its financial soundness or business ethics. *Trans World Accounts, Inc. v. Associated Press,* 425 F.Supp. 814 (N.D.Cal.1977); *Golden Palace Inc. v. National Broadcasting Co., Inc.,* 386 F.Supp. 107 (D.D.C.1974) *aff'd* 530 F.2d 1094 (D.C. Cir.1976); *see* Annot., *Action by Corporation for Libel or Slander,* 52 A.L.R. 1199 (1928).

KOAT–TV argues that the statements made by it were substantially true, and that, since truth is a defense to an action

---

1. Broadcasting of defamatory material by means of television is generally held to constitute libel and not slander, irrespective of whether it is read from a manuscript. Restate-ment (Second) of Torts § 568 A (1977); *see generally* Annot., *Defamation by Radio and Television,* 50 A.L.R.3d 311 (1973).

for defamation, the defense is also applicable where the statement is substantially true. *Franklin v. Blank,* 86 N.M. 585, 525 P.2d 945 (Ct.App.1974). In *Franklin,* the court quoted with approval the rule stated in *Saleeby v. Free Press,* 197 Va. 761, 763, 91 S.E.2d 405, 407 (1956): "It is not necessary to prove the literal truth of statements made. Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is 'substantially' true." *Franklin v. Blank, supra.*

KOAT–TV also argues that its broadcast is protected under the "innocent meaning rule." This rule was adopted in *Dillard v. Shattuck,* 36 N.M. 202, 11 P.2d 543 (1932). The rule declares that if a statement is ambiguous and capable of more than one meaning, both defamatory and innocent, a defamatory construction will not be given the words unless that is their plain and obvious import. The language will receive an innocent interpretation where such meaning is fairly attributable. *Reed v. Melnick,* 81 N.M. 608, 471 P.2d 178, 49 A.L. R.3d 156 (1970).

KOAT–TV contends that whether a report is substantially true or published with malice must be determined by viewing the broadcast as a whole, not selected parts of it. *Marchiondo v. New Mexico State Tribune Co., (Marchiondo I),* 98 N.M. 282, 648 P.2d 321 (Ct.App.1981), *cert. quashed,* June 29, 1982.

Plaintiff's complaint only specifically identifies *two* statements contained in KOAT–TV's broadcast that were allegedly defamatory: (a) The statement or innuendo that plaintiff was insolvent because its liabilities currently exceeded its assets; and (b) the statement or innuendo that as a result of financial problems the plaintiff would be placed in the hands of a bonding company. Additionally, plaintiff alleged there were other defamatory statements in the broadcast but did not identify them in its complaint.

█ The issues of whether defendant's statement that plaintiff's "liabilities will far outweigh its assets" was false at the time it was spoken and whether in the face of denials of this fact by credit union personnel during their interviews it was "maliciously" made, create an issue of fact not appropriate for summary judgment.

In reviewing an order granting summary judgment, an appellate court must resolve all reasonable doubts in favor of the opponent of the motion, and if the evidence adduced by the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there was a genuine issue as to any material fact, then the granting of summary judgment was improper. *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 568 P.2d 589 (1977); *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico,* 79 N.M. 293, 442 P.2d 783 (1968). On the motion for summary judgment, the proponent has the burden of establishing the absence of a genuine issue of material fact concerning its statements regarding Coronado's financial condition in respect to its assets and liabilities. *Peoples State Bank v. Ohio Cas. Ins. Co.,* 96 N.M. 751, 635 P.2d 306 (1981).

Although audit reports later obtained by Coronado following KOAT–TV's broadcasts confirmed KOAT–TV's statement that the credit union's liabilities exceeded its assets, there is a fact question as to whether this statement was true at the time of the broadcast or whether this consequence resulted from a run of depositors making withdrawals due to publication of the statement. The affidavits filed by Coronado in opposition to the motion for summary judgment assert that neither of the news sources identified by KOAT–TV nor any of the documentary materials revealed by it substantiate the fact that "even the most optimistic sources say that this institution's liabilities will far outweigh its assets" and that such assertion was false.

KOAT–TV has asserted that its alleged defamatory statements were truthful, and that the statements published by it were without malice, yet it has also refused to reveal all the sources upon which it relied. Can it both deny the existence of malice and on its motion for summary judgment

also decline to attribute the basis for its statement?[2] No fixed rule precluding summary judgment under such circumstances is appropriate and each case must turn on the particular facts which exist therein. Under the record before us we find that a material issue of fact exists concerning the truthfulness of the alleged defamatory statement respecting Coronado's assets and liabilities. The truth or inaccuracy of this statement must be determined at trial. In the absence of a showing of privilege, the existence of malice is a fact question, and is not a question of law to be decided on summary judgment. *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico, supra; Stewart v. Ging,* 64 N.M. 270, 327 P.2d 333 (1958). KOAT–TV has not shown on the motion for summary judgment that it in fact had any documents or news source that established that Coronado's liabilities in fact exceeded its assets, nor did KOAT–TV unequivocally broadcast this statement as merely an opinion upon facts truly disclosed.

■ As held in *Kutz v. Independent Pub. Co., Inc., supra,* if a statement fails to contain a full disclosure of the facts upon which an alleged opinion is based and there are implications in the statement "that the writer has private, underlying knowledge to substantiate his comments about plaintiff," and such knowledge implies the existence of defamatory facts, the statement is deemed to be factual and not privileged. Where the court cannot say as a matter of law that a statement was not understood as a fact, as distinguished from opinion, there is a triable issue of fact for the fact finder. *Marchiondo v. Brown (Marchiondo II),* 98 N.M. 394, 649 P.2d 462 (1982).

Because of the implication that the "most optimistic sources" possessed undisclosed information not available to the listener, a material issue of fact existed as to whether this statement concerning Coronado's assets was (1) substantially true at the time of the broadcast and (2) published with "malice," and whether any actual or special damages were directly caused thereby. Summary

judgment should not be granted if there is a genuine issue of material fact in dispute. *See Livingston v. Begay,* 21 N.M.St.B.Bull. at 1390, 652 P.2d 734 (1982).

■ The other statements specifically complained of by plaintiff, however—that the comprehensive audit report being prepared "will likely show a very lopsided balance sheet" and that "[i]t will apparently be up to bonding companies and insurance corporations to put this credit union back on its feet"—as matters of law were properly determined to constitute statements of opinion which come under the umbrella of protected speech under the first amendment. *See Marchiondo I.* The trial court's order granting summary judgment as to these two statements was proper.

With the exception of the statements discussed above, Coronado did not plead *specifically* any other language in the broadcast alleged to have been defamatory, but instead made only vague, general references to the false nature of the entirety of the broadcast; therefore, summary judgment was proper as to the other portions of the broadcast. Plaintiff has failed to sustain its burden in response to KOAT–TV's motion and come forward and show the existence of genuine factual issues as to other allegedly untrue statements which were alleged in its complaint and which were not either substantially true or outside the claims of privilege asserted by KOAT–TV warranting summary judgment as a matter of law. *See Peoples State Bank v. Ohio Cas. Ins. Co., supra.*

The trial court's granting summary judgment was proper except as to the statement specifically pleaded in its complaint alleging that Coronado's liabilities purportedly will far exceed its assets.

II. *Is Plaintiff a "Public Figure" and thus Required to Prove KOAT–TV Published Defamatory Statements with "Malice?"*

Plaintiff contends the trial court erred in requiring it to allege and prove defendant

---

**2.** N.M.R.Evid. 514, which became effective November 1, 1982, specifically established a qualified privilege on the part of a representative of the media to protect the confidentiality of news sources and information.

published the alleged defamatory statements concerning plaintiff with "malice." Plaintiff argues that as a credit union it is not a "public figure."

■ A threshold inquiry in a defamation action involves determination of the status of the plaintiff as a "private person," a "public official" or "public figure." Ascertaining the status of plaintiff is necessary since it dictates the standard of proof applicable in the law suit.

As held in *Marchiondo I:*

Under the decisions of the United States Supreme Court, a plaintiff's status as either a public official, public figure, or private person is relevant in determining the standard by which an aggrieved party's proof of damages must be measured. The question of whether one is a "public figure" or a "private person" is a question of law.

648 P.2d at 330. (Citations omitted.)

■ The defense of *"fair comment"* is predicated upon the principle that the interests of society are furthered through a free discussion of public affairs and matters of public interest. In order to come within the ambit of this defense it must be shown that the publication relates to a matter of public interest; that it does not impute dishonorable motives to its subject; and that it must constitute an expression of opinion on based truly-stated facts. *Marchiondo I, supra; Mauck, Stastny & Rassam, P.A. v. Bicknell,* 95 N.M. 702, 625 P.2d 1219 (Ct.App.1980). The common law defense of fair comment has been expanded by *Gertz, supra,* "not only to permit expressions of opinion, but to include inaccurate or misleading statements of fact, unless made with 'actual' malice. If the fact-finder finds actual malice, the defense of fair comment is defeated . . . ." *Marchiondo I,* 648 P.2d at 333.

Plaintiff relies upon *Bruno v. Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583 (1st Cir.1980), for the proposition that a corporation is not a "public figure" unless it passes a high threshold of public activity. Here, however, Coronado has been shown to have been incorporated under an act allow-ing for the chartering of state credit unions and that it customarily advertises and holds itself out as serving public employees at UNM as well as former employees of that institution. Whether a person or entity within the law of defamation is a "public figure" or a private person is a question of law. *Marchiondo II, supra.* A defendant has the burden of persuasion on this issue by a preponderance of the evidence. *Reliance Insurance Co. v. Barron's,* 442 F.Supp. 1341 (S.D.N.Y.1977); *see also Rancho La Costa, Inc. v. Superior Court of Los Angeles Co.,* 106 Cal.App.3d 646, 165 Cal. Rptr. 347 (1980).

Justice Federici in *Marchiondo II* wrote:

United States Supreme Court cases prior to *Gertz* held that where a defamation plaintiff was either a public official or *public figure, or where an allegedly defamatory statement involved a matter of public concern,* it was incumbent upon the plaintiff to prove that the defendant acted with actual malice (with knowledge of falsity or in reckless disregard of the truth). This is still the applicable rule. (Citations omitted.) [Emphasis added.]

■ In *Marchiondo II,* the court also held that, where the defamation plaintiff is not a public official or a public figure but a private person, New Mexico applies the standard of ordinary negligence as the measure of proof necessary to establish liability for compensation for actual injury. Whether a corporation may constitute a "public figure" within the law of libel is a matter of first impression in this jurisdiction.

Whether a corporation which sues for libel occupies a status as a "public figure" turns on the particular facts of each case. The factors involved in determining whether a corporation becomes a "public figure" are discussed by R. Sack, *Libel, Slander, and Related Problems,* § V.3.1.9 at 208–209 (1980):

It seems clear . . . that any *publicly held* corporation is a "public figure" for purposes of commentary about its corporate affairs. When a corporation "goes public" by publicly offering its securities, it

has taken a specific, voluntary action, the known result of which will be mandatory increased public scrutiny. The necessary consequence is publicity.

It is consistent with both First Amendment policy and the aims of federal and state securities laws for commentary about such corporations to be encouraged and protected. *Corporations subject to regulation by state or federal authorities are similarly "public," again inviting public scrutiny by voluntarily entering such businesses.* And corporations that have the requisite level of dealings with government agencies may be "public figures" for that reason alone. (Emphasis supplied, this paragraph only.) (Footnotes omitted.)

The trial court's determination that Coronado was a "public figure" was correct. The record indicates (1) Coronado is a corporation especially chartered under a law to financially serve members of the public (Credit Union Act § 58–11–1, N.M.S.A. 1978, et seq.); (2) the corporation is subject to supervision and regulation by the State of New Mexico, § 58–11–32, N.M.S.A.1978, and § 58–11–6, N.M.S.A.1978; (3) the subject matter discussed in the news broadcasts by KOAT–TV involved matters of public concern; and (4) Coronado's financial situation was of interest to the general public as well as to each of its approximately 4,000 members. The general public has a vital interest in knowing the financial status of a large credit union which has suspended the payments of dividends and which circulates data to its members indicating that it has experienced management and investment problems.

Credit unions under New Mexico law are so involved with the public interest that they must be comprehensively regulated and guaranteed by the state and are functionally equivalent to banks. Banks have been recognized as more than a purely private enterprise. In *Lynch v. Santa Fe National Bank,* 97 N.M. 554, 627 P.2d 1247 (Ct.App.1981), *cert. denied* June 30, 1981, the court stated, "Banks perform an important and necessary public service. It can-

not be seriously argued that they are not affected with a public interest." 627 P.2d at 1252, *quoting Hy-Grade Oil Co. v. New Jersey Bank,* 138 N.J.Super. 112, 350 A.2d 279 (1975). Similarly, insurance companies have been held to constitute "public figures." *American Ben. Life Ins. Co. v. McIntyre,* 375 So.2d 239 (Ala.1979). The trial court correctly determined that the standard of proof required of Coronado in the instant case is proof of actual malice, not negligence. This is an issue which may properly be decided as a matter of law. *Kutz v. Independent Publishing Co. Inc., supra.*

Coronado argues that even if either a constitutional or common law malice standard is found to apply, there existed material issues of fact as to whether the alleged defamatory statements of KOAT–TV were published with malice, which should have precluded the granting of summary judgment. Determination of the existence of malice is a question of fact.

KOAT–TV contends that the alleged defamatory comments made by it are privileged under the defense of fair comment, and that under *Gertz,* this common law privilege has taken on constitutional dimension. *Mauck, Stastny & Rassam, supra.* Defendants also have asserted as a defense herein, the qualified privilege of "good faith." In *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico, supra,* the court said "An occasion giving rise to the privilege [of good faith comment] is one consisting of good-faith publication in the discharge of a public or private duty when the same is legally or morally motivated." 79 N.M. at 295–96, 442 P.2d at 786–87. Similarly, *Restatement of Torts,* (Second), §§ 594–598 (1977) sets out five different occasions when a defamatory statement may be considered to be privileged. These are when the speaker seeks to protect: (1) his own interest; (2) the interest of the recipient of the communication or a third person; (3) an interest he holds in common with others; (4) the interest of a member of the speaker's immediate family; and (5) the interest of the public in general.

The "fair comment" privilege is conditional and to qualify the comments must be substantially accurate and complete or constitute a fair abridgement. If the statement condenses a long discussion, it must be a summary of substantial accuracy. In the motion for summary judgment, KOAT–TV's statement concerning Coronado's assets and liabilities cannot be said on the basis of the record before us to be substantially correct so as to be qualifiedly privileged as a matter of law. The truth or falsity of this statement and whether it was published with malice is a question of fact.

Determination of whether a privilege applies to an alleged defamatory statement is a matter of law to be determined by the court. *Mahona-Jojanto, Inc. v. Bank of New Mexico, supra; Stewart v. Ging, supra.* We affirm the trial court's order granting summary judgment herein except for the statement contained in defendant's broadcast that "even the most optimistic sources say that this institutions liabilities will far outweigh its assets . . . ." The trial court correctly determined that Coronado was a "public figure" and that the burden of proof imposed upon plaintiff was to establish that KOAT–TV published the alleged defamatory statement with malice.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.