# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __**June 4, 2018**__

**NO. A-1-CA-36351**

**ANITA REINA,**

    Plaintiff-Appellee,

v.

**LIN TELEVISION CORPORATION,
d/b/a KRQE and LARRY BARKER,**

    Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Denise Barela Shepherd, District Judge**

Stephen F. Lawless, P.A.
Stephen F. Lawless
Albuquerque, NM

for Appellee

Esquivel & Howington, LLC
Martin R. Esquivel
Albuquerque, NM

for Appellants

**OPINION**

**FRENCH, Judge.**

{1}     This interlocutory appeal requires us to determine whether a hearing officer employed by the City of Albuquerque (the City) is a public official and therefore required to prove that Defendants acted with actual malice in broadcasting an allegedly defamatory story about her. We conclude that Plaintiff is a public official and reverse the order of the district court finding that she is a private figure plaintiff.

**BACKGROUND**

**Factual Background**

{2}     Plaintiff worked exclusively as an administrative hearing officer for the Office of Administrative Hearings for the City for over one year. She then sought and acquired a second job, an action that required prior written approval from the City's human resources department per the City personnel code. Plaintiff began serving as a tribal judge for the San Felipe tribal court before receiving written approval from the City's human resources department, though by then her immediate supervisor in the Office of Administrative Hearings approved her request in a form titled "Request for Permission to Engage in Employment Outside the City of Albuquerque."

{3}     Eventually, Defendant Larry Barker, an investigative reporter for KRQE News 13, began researching Plaintiff's employment arrangements with the City and the San

Felipe tribal court. Barker reviewed memos that Plaintiff submitted to the City and various leave slips tracking her schedule with the tribal court and her absences from the City, and he interviewed Plaintiff's supervisor at the City, along with the chief administrative officer of the City. As a consequence of Barker's investigation, the City began its own formal investigation, for which it retained Robert Caswell Investigations. That investigation found that Plaintiff was employed with the City Monday through Friday, from 8:00 a.m. to 5:00 p.m., for a total of forty hours per week and that she possibly defrauded the City by working at times as a tribal judge at the Pueblo of San Felipe during those hours. The investigation findings also noted that Plaintiff used her City-issued computer to correspond with the San Felipe Pueblo, that she admitted working longer than her scheduled hours at San Felipe, and that she claimed to have "made up" the time with the City, but she lacked documentation showing as much.

{4} Plaintiff did not contest the findings of the investigator, and she voluntarily resigned her employment with the City. Two days after her resignation, KRQE News 13 broadcasted a report about Plaintiff, in which Plaintiff was purportedly referred to as "The Cheating Judge" in reference to her work as a tribal judge during employment hours with the City. This and other statements in the report regarding her

2

performance of her work as a hearing officer form the basis of Plaintiff's defamation claim.

**Procedural Background**

{5}    Plaintiff sued Defendants for defamation. Defendants moved for summary judgment, claiming (1) Plaintiff was a public official; (2) the matter reported was true; and (3) Plaintiff could not meet her burden of proof, which required her to establish that Defendants acted with actual malice. The district court concluded that Plaintiff was not a public official as a matter of law, but stated that it lacked guidance in our caselaw for the determination. After further discovery, Defendants asked that the district court certify its order determining that Plaintiff was not a public official for interlocutory review. The district court did so, and upon Defendant's application, we granted interlocutory review and assigned the matter to the general calendar. Defendants argue that the district court erred in determining that Plaintiff is not a public official.

**DISCUSSION**

{6}    If Plaintiff—a hearing officer with the City—is a public official, then in order to prevail in a defamation cause of action, she must meet the actual malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "Whether a plaintiff is a public official is a question of law that we review de novo." *Young v. Wilham*,

2017-NMCA-087, ¶ 10, 406 P.3d 988, *cert. denied*, \_\_\_-NMCERT-\_\_\_, (S-1-SC-36497, Aug. 3, 2017); *Marchiondo v. Brown*, 1982-NMSC-076, ¶ 24, 98 N.M. 394, 649 P.2d 462.

{7} "Ascertaining the status of [a] plaintiff is necessary since it dictates the standard of proof applicable in the law suit [sic]." *Coronado Credit Union v. KOAT Television, Inc.*, 1982-NMCA-176, ¶ 33, 99 N.M. 233, 656 P.2d 896. Public official and public figure plaintiffs must prove that the defendant acted with actual malice in publishing a defamatory statement, *Sullivan*, 376 U.S. at 279-80, but a private figure plaintiff need only prove that the defendant acted negligently. *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 21, 108 N.M. 424, 773 P.2d 1231. The heavier burden on public official and public figure plaintiffs reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270. Specifically, public official and public figure plaintiffs must prove that the defendant acted in reckless disregard of the truth and with knowledge of falsity. *Newberry*, 1989-NMSC-024, ¶ 17*; see Furgason v. Clausen*, 1989-NMCA-084, ¶ 26, 109 N.M. 331, 785 P.2d 242 ("[W]here a plaintiff in a defamation action is either a public official or a public figure, or where an allegedly defamatory statement

4

involved a matter of public concern, it is incumbent upon the plaintiff to prove that the defendant acted with actual malice[.]" (internal quotation marks and citation omitted)).

{8} In *Furgason*, we acknowledged that the terms "public figures" and "public officials" have not been defined, but we have adopted tests for determining whether a person is to be considered one. 1989-NMCA-084, ¶ 29 (internal quotation marks omitted). The first category of plaintiffs that must prove actual malice has been generally stated to include those who, "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures." *Id.* (internal quotation marks and citation omitted). There are two types of public figures, "those who occupy positions of such persuasive power and influence that they are deemed public figures for all purposes, and limited public figures, consisting of those who have thrust themselves to the forefront of particular public controversy in order to influence the resolution of the issues involved." *Id.* (alteration omitted).

{9} Regarding the latter category, the test for whether a given plaintiff is a public official turns on the degree of the person's responsibility for and control over government affairs. *Id.* ¶ 35. "It is clear that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have,

or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Id.* (omission, internal quotation marks, and citation omitted). Public officials occupy positions in government that have "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it," one that is beyond the public's general interest in the qualifications and performance of all government employees. *Id.* (internal quotation marks and citation omitted). The public has a special interest in persons "who are in a position significantly to influence the resolution of . . . [public] issues." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

{10} The district court noted that Plaintiff's position as a hearing officer "is distinguishable from positions that clearly are classified as a 'public official,' such as an elected city commissioner or a district court judge[,]" the positions held by the plaintiffs in two federal cases, *Sullivan*, 376 U.S. 254, and *Garrison v. State of Louisiana*, 379 U.S. 64 (1964). While that may be true, it does not eliminate the possibility that a hearing officer—hired to resolve disputes in matters of public concern in proceedings that are at the very least quasi-judicial—is also a public official. To determine whether this is the case, we apply the test for public official status articulated in *Rosenblatt* and adopted in *Furgason*, which we repeat in full below:

> It is clear that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.
>
> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, . . . the [actual] malice standards apply.

*Furgason*, 1989-NMCA-084, ¶ 35 (omissions omitted) (quoting *Rosenblatt*, 383 U.S. at 85-86). Based on the application of this test, we reverse the order of the district court determining that Plaintiff was not a public official.

{11} On appeal, Defendants argue that only one New Mexico case squarely addresses the public official status of Plaintiff, citing *Ammerman v. Hubbard Broadcasting, Inc.*, 1977-NMCA-127, 91 N.M. 250, 572 P.2d 1258, and that the plaintiff in that case was employed by the police department, unlike the situation in this case. *Id.* ¶ 1. Defendants then argue that the quasi-judicial character of Plaintiff's position as a hearing officer and the work performed by a hearing officer qualify Plaintiff as a public official.

{12} We describe with some detail the work that Plaintiff performed as a hearing officer and agree with Defendants: Plaintiff is a public official for purposes of her defamation suit because she possessed substantial responsibility for and control over governmental affairs.

7

{13} Plaintiff was an employee of the City. She was appointed as an administrative hearing officer under Chapter 2, Article 7 of the City's ordinance in June 2009. Albuquerque, N.M., City Ordinance ch. 3, art. VII, § 2-7-8-5(B) (2009, amended 2012) At the time of her hiring, Section 2-7-8-5(B) of the ordinance stated that hearing officers are to "be appointed by the Presiding Judge of the Civil Division of the Second Judicial [District] Court." Plaintiff's interview for the hearing officer position took place before three district court judges.

{14} The creation of the position that Plaintiff occupied sheds further light on its public nature. Section 2-7-8-2 provides context, explaining that the City established the Independent Office of Hearings, a division of the City that independently conducts the hearings that the City requires, because the use of city employees as hearing officers "has created a perception that the independence of hearing officers has been or can be compromised." Section 2-7-8-2(D). "To ensure confidence in the hearing officer process it has become necessary to create an Independent Office of Hearings to protect employees acting as hearing officers from actual or perceived influence from the city's administration." Section 2-7-8-2(E).

{15} The role that a hearing officer plays in the administration of city ordinances and the adjudication of disputes over city ordinances, which are governmental affairs, carries with it such weight and responsibility that the city council undertook, by its

8

creation of the Independent Office of Hearings, specific measures to ensure "that any city hearing officer act[s] in a fair and impartial manner" and is "perceived as acting in a fair and impartial manner." Section 2-7-8-2(C). The parties present during a hearing are members of the public, and it is the public's perception of hearing officers that led the city council to establish the Independent Office of Hearings. We find the establishment of the Independent Office of Hearings indicative of the public's special interest in the qualifications and performance of hearing officers, one that exceeds the interest it has in the qualifications and performance of any government employee given the City's heightened sensitivity to public perception. *See Furgason*, 1989-NMCA-084, ¶ 35 (explaining that public officials occupy positions in government that have "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it," one that is beyond the public's general interest "in the qualifications and performance of all government employees" (internal quotation marks and citation omitted)).

{16} Plaintiff's performance in her role as a hearing officer was extensive in both the scope of her authority and in the subject matter to which her authority extended. For example, hearing officers are required to determine whether the City could prove by a preponderance of the evidence that a member of the public violated a city ordinance. They also occasionally rule on the constitutionality of city ordinances.

They preside over hearings and swear in witnesses as needed. Hearing officers are responsible for conducting all of the City's hearings concerning its ordinances, which include land use, zoning, liquor licenses, and personnel hearings. Moreover, determinations of a hearing officer are subject to judicial review, and like most any court ruling, can be appealed by the non-prevailing party.

{17}     Functionally, Plaintiff was the decision making authority in semi-formal, quasi-judicial proceedings that involved the application of law, including city ordinances, to the conduct of members of the public. And the subject matter of the ordinances varied. Plaintiff said that she handled vehicle seizure issues and carport zoning issues, and she was also asked "to do work on proposal language on [a] new ordinance," and "to do work on two seizure provisions and asked to do some firearms cases[.]" Plaintiff said that she initially presided over hearings addressing the use of red light cameras, but later she accepted more work, including zoning hearings, when her red light docket slowed. She handled as many as 35-60 zoning hearings in one day, which dealt with "proposed brick walls, special variance exceptions, [and] parking space variances, etc." She described the zoning hearings as "a completely different type of hearing." All of her decisions had to be written. Once each case closed, she made a decision based on the zoning codes and prepared written findings and conditions of approval. Plaintiff also said that up to sixty members of the public attended some of

these hearings. The number of hearings, the breadth of the subject matter of the hearings, and the attendance of and participation by the public in these hearings bolsters the importance of Plaintiff's position such that the public has an interest in her qualifications and performance of the work, and evinces Plaintiff's responsibility for and control over the conduct of governmental affairs.

{18}     Finally, we briefly address Plaintiff's arguments that (1) hearing officers cannot be considered public officials because they are unelected, and (2) one of our statutes defines " 'public official' as 'a person elected to an office in an election covered by the Campaign Reporting Act[.]' " NMSA 1978, § 1-19-26(P) (2015) Running for office, hiring a campaign manager, or "putting yourself in the public eye to let people know what you think[]" are not conditions of public official status in the context of defamation lawsuits. Whether the government employee plaintiff was a politician or subject to election may suffice to conclude that the plaintiff is a public official, but it is not necessary to reach that conclusion. The test for public official status hinges on whether the defamation plaintiff has "substantial responsibility for or control over the conduct of governmental affairs." *Furgason*, 1989-NMCA-084, ¶ 35 (internal quotation marks and citation omitted). Such authority at times exists in the absence of elections and politics. Additionally, we do not look to state statutes to inform our understanding of who constitutes a public official. *See Rosenblatt*, 383 U.S. at 84

11

(rejecting the suggestion that the determination of public official status should be answered by reference to state law standards because states "have developed definitions of 'public official' for local administrative purposes, not the purposes of a national constitutional protection").

**CONCLUSION**

{19}     We reverse the order of the district court concluding that Plaintiff is a private figure and hold that she is a public official, and we remand for further proceedings consistent with this opinion.

{20}     **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**EMIL J. KIEHNE, Judge**